**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CASE NO.: 5:16-cv-00168-RLV-DSC**

| | | |
|---|---|---|
| CALVIN A. TAUSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MIDLAND STATES BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Midland States Bank's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13; *see* Doc. 16) and on Defendant's Motion to Strike Plaintiff Calvin A. Tauss' "Memorandum Act of RESPA" ("Motion to Strike") (Doc. 19). Following the Court's June 26, 2017 Roseboro Notice, Plaintiff filed a response to the Motion to Dismiss on July 17, 2017. (Doc. 21). The time for filing a reply has passed and both Motions are ripe for review. For the reasons set out below, Defendant's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13) is **DENIED**, Defendant's Motion to Strike (Doc. 19) is **GRANTED** and Plaintiff's "Memorandum Act of RESPA" (Doc. 18) is **STRICKEN**.

**I.     JURISDICTION**

This is an action alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). As made clear in *pro se* Plaintiff's pleadings and as construed by the Court, Plaintiff brings claims under 12 U.S.C. § 2605. Any action pursuant to § 2605 "may be brought in the United States district court . . . for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614.

Plaintiff alleges that the property involved is located at 527 Margaret Drive, Statesville, North Carolina, an allegation not disputed by Defendant in its Motion to Dismiss and an allegation supported by documents filed with Plaintiff's pleadings. (*See* Doc. 10 at 1, 19). Statesville is located in the Statesville Division of the Western District of North Carolina. Plaintiff filed this action in a proper district court and proper division. Plaintiff alleges, as a violation of § 2605, a lapse in insurance coverage as of September 2015 due to Defendant's failure to pay premiums from an escrow account. (Doc. 10 at 2). Plaintiff also alleges later-occurring violations of § 2605. (Doc. 10 at 3-4, 17; Doc. 15-1). Plaintiff filed the original Complaint on September 23, 2016 (Doc. 3), an Amended Complaint on October 17, 2016 (Doc. 10), and a supplemental pleading on February 16, 2017 (Docs. 15, 15-1). All pleadings have been filed well-within three years from the date of the occurrence of the first violation. The Court, therefore, has jurisdiction under 12 U.S.C. § 2614.

## II. BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action on September 19, 2016, by moving for an emergency order directing Defendant to authorize restoration of normal water service at Plaintiff's home. (Doc. 1). On that same day, Plaintiff filed a Motion to Proceed *in Forma Pauperis*. (Doc. 2). On September 23, 2016, Plaintiff filed his original Complaint (Doc. 3) and the Court denied Plaintiff's motion for an emergency order (Doc. 4). On September 27, 2016, the Court granted Plaintiff's Motion to Proceed *in Forma Pauperis*. (Doc. 5). Within 21 days following service of the original Complaint, Plaintiff filed an Amended Complaint. (Doc. 10). Defendant timely responded with a Motion to Dismiss Pro Se Complaint as Amended pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). (Doc. 13).

Plaintiff did not respond to the Motion to Dismiss and, before the Court issued a Roseboro Notice, Plaintiff filed a "second" Amended Complaint on February 16, 2017, without first seeking leave of the Court or Defendant's written consent. (Doc. 15). Defendant responded to the "second" Amended Complaint, incorporating its prior Motion to Dismiss. (Doc. 16).

On April 17, 2017, Plaintiff filed a "Memorandum Act of RESPA." (Doc. 18). Defendant moves to strike the "Memorandum Act of RESPA" on the grounds that Plaintiff failed to first obtain leave to file the additional pleading and the content of the pleading appears to be irrelevant to the matter presently before the Court. (Doc. 19).

The Court provided Defendant with a Roseboro Notice (Doc. 20) and Plaintiff timely responded to the Motion to Dismiss (Doc. 21). The time for a reply has passed.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a claim based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss, a court must construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court, however, "'need not accept the legal conclusions drawn from the facts,'" nor "'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

While Fed. R. Civ. P. 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  In order to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Requiring plausibility "does not impose a probability requirement at the pleading stage" *id.* at 556, but does demand more than "a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678.  Ultimately, a claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

In applying this standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted).  However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions[.]" *Giarratano*, 521 F.3d at 304 n.5 (internal quotation marks omitted); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679)).  The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Ashby v. City of Charlotte*, 121 F. Supp. 3d 560, 562 (W.D.N.C. 2015) (internal quotation marks omitted).

## IV.  ANALYSIS

The Court will first consider Defendant's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13).  The Court will separately consider Defendant's Motion to Strike (Doc. 19).

A.     <u>Allegations Relevant to Motion to Dismiss</u>

    i.     *Pleadings Properly Before the Court*

A threshold question is which pleadings may be considered by the Court in addressing the Motion to Dismiss. Plaintiff filed his first Amended Complaint on October 17, 2016, which included RESPA claims. (Doc. 10). A party may amend its pleading once as a matter of course within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). The summons and original Complaint were served on October 3, 2016. (Doc. 9 at 1, 4). Thus, Plaintiff's first Amended Complaint, which is titled "Amended Complaint Act of RESPA," was filed within the 21-day period and, therefore, properly filed as a matter of course under Fed. R. Civ. P. 15(a)(1)(A). Defendant filed a Motion to Dismiss Pro Se Complaint as Amended on November 23, 2016. (Doc. 13).

Without seeking leave of Court, Plaintiff filed a "second" Amended Complaint on February 16, 2017. (Docs. 15, 15-1 ("Amended #2 Act of RESPA")). The "second" Amended Complaint repeats the language of the first Amended Complaint and then adds language relating to an alleged failure by Defendant to pay 2016 real property taxes from an escrow account, claimed to be a further violation of RESPA. (Doc. 15-1 at 1-2). After amending once as a matter of course, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Defendant did not specifically object to the "second" Amended Complaint but instead responded by incorporating its earlier Motion to Dismiss. (Doc. 16). The Court does not view Defendant's response as written consent to a second amendment.

The "second" Amended Complaint may be construed as a supplemental pleading because the events described in new allegations occurred after Plaintiff filed the first Amended Complaint on October 17, 2016. The "second" Amended Complaint alleges that on February 10, 2017, Plaintiff received a notice of delinquent taxes for the property subject to the mortgage. (Doc. 15-

1 at 4). Plaintiff included a copy of a monthly statement provided by Defendant which showed payments being made to an escrow account for taxes and insurance. (Doc. 15-1 at 3). These events occurred months after the filing of the first Amended Complaint. The filing of February 16, 2017, occurred promptly after the events alleged. Thus, the "second" Amended Complaint will be construed as an attempted supplemental pleading under Fed. R. Civ. P. 15(d).

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Plaintiff has not moved to supplement his pleadings. Courts in this Circuit, however, have liberally construed a *pro se* pleading as a motion seeking leave to supplement a complaint. *See, e.g.*, *Dicks v. Flury*, 2015 WL 847409, at *2 (D. Md. Feb. 25, 2015) (declining to strike supplement to amended complaint even though *pro se* party failed to seek permission as required by Rule 15(d)); *Smith v. Stevenson*, 2010 WL 1257510, at *6 n.6 (D.S.C. Mar. 24, 2010) (addressing *pro se* supplemental pleading despite fact party failed to file a proper motion under Rule 15(d)). The Court will, therefore, consider whether to grant leave with respect to the *pro se* supplemental pleading.

"Rule 15(d) motions are to be evaluated under the same standards used to evaluate motions to amend pleadings under Rule 15(a), which generally states that leave to amend should be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith or futility." *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004). The Court finds that because the supplemental pleading arises from the same alleged obligations of Defendant to make timely payments from the escrow account related to Plaintiff's mortgage, no valid reason for denying leave to supplement exists. Plaintiff filed the supplemental pleading within one week of the alleged receipt of the delinquent

tax notice (Doc. 15-1 at 1) and there is no indication of bad faith or futility as the new allegations are of the type contained in the first amended Complaint. Defendant has responded to the supplemental pleading (Doc. 16) and leave to file will not delay resolution of the Motion to Dismiss. The Court, therefore, grants leave to file the supplemental pleading.

For purposes of addressing the Motion to Dismiss, the operative pleading is the "Amended Complaint Act of RESPA," including exhibits (Doc. 10), as supplemented by "Amended #2 Act of RESPA," including exhibits (Doc. 15-1), collectively the "Supplemented Complaint."[1]

  ii. *Allegations*

The relevant Supplemented Complaint allegations, taken as true for purposes of a Rule 12(b)(6) motion to dismiss, are as follows:

(1) Plaintiff had a loan from Midland States Bank on which he made payments on principal and interest as well as into an escrow account for taxes and insurance. (Doc. 15-1 at 3).

(2) In December 2015, torrential rains and inclement weather caused severe damage to Plaintiff's home, including the roof and interior. Plaintiff informed his homeowners insurance company of the event and the insurance company sent an adjuster to survey the damage. (Doc. 10 at 1).

(3) Shortly thereafter, Plaintiff learned that his homeowners insurance had been cancelled in September 2015 because premiums had not been paid. (Doc. 10 at 1-2).

(4) Plaintiff examined the mortgage statements sent to him by Defendant and found the statements showed the homeowners insurance as being paid. (Doc. 10 at 2; Doc. 15-1 at 3).[2]

---

[1] In this case, the Motion to Dismiss (Doc. 13) will not be treated as moot. Defendant did not object to the "second" Amended Complaint but responded by incorporating its Motion to Dismiss filed November 23, 2016 (Doc. 13) and its memorandum in support (Doc. 13-1). (Doc. 16). Plaintiff has been given an opportunity to respond and did respond. (Doc. 21). The Court, therefore, treats the Motion to Dismiss as being made with respect to the Supplemented Complaint. (*See* Docs. 13, 16).

[2] Plaintiff appears to allege that the monthly statement shows the homeowners insurance as being paid. The monthly statement included in the supplemental pleading, however, indicates that Plaintiff made at least some payments into an escrow account rather than payments being made from the escrow account. (*See* Doc. 15-1 at 3). This difference does not affect the Court's determination of the Motion to Dismiss. Rather, the monthly statement shows an escrow for the payment of taxes and insurance. (*Id.*).

(5)     Plaintiff was informed by Defendant that it denied responsibility for the nonpayment. (Doc. 10 at 2).

(6)     In the meantime, Plaintiff was in the process of refinancing his home with a Miami-based lender. Plaintiff was informed by that lender that Defendant denied Plaintiff was a veteran under the Veteran's Administration loan program. Plaintiff called Defendant, asking if he was a loan holder under the V.A. program and was told he was. (Doc. 10 at 3).

(7)     Plaintiff then arranged to get homeowners insurance through Tarheel Insurance of Statesville but ten days after making a deposit, Plaintiff received a letter from an underwriter imposing a requirement to make a $400 deposit and provide proof of repair of the damages to his home, which he was not able to do because of "finances" and the costs to repair the damages to the home. (Doc. 10 at 3).

(8)     Believing that under a "ruling in RESPA" Defendant was required to remit the [escrow] monies to the insurance company, Plaintiff sent a Letter of Intent to the Defendant informing it of the RESPA "ruling." (Doc. 10 at 2-3, 17).

(9)     On February 1, 2016, Plaintiff wrote Defendant a "Letter of Intent" stating that the letter was "a qualified written request under section 6 of the Act [RESPA]," demanding payment for damages to the home and property incurred from storm damage, seeking estimated costs of repair of $9,500. (Doc. 10 at 3, 17).

(10)    The Letter of Intent also informed Defendant that Plaintiff's insurance company informed him of a discontinuance of coverage on yet "all the statements you sent me show the insurance as being paid in auto pay arrangement." (Doc. 10 at 18).[3]

(11)    The Letter of Intent stated that Plaintiff intended to bring a lawsuit if an equitable resolution of the problem could not be reached and that he further understood that under Section 6 of RESPA that Defendant had 20 days to acknowledge his request. (Doc. 10 at 17-18).

(12)    On March 21, 2016, Defendant sent a letter to Plaintiff with the subject heading "Confirmation of Payment." The letter stated that "[p]ursuant to your request, please find this letter as confirmation that Midland States Bank (hereinafter 'Midland') agrees to pay the following costs in relation to the repair of the property" in question. The letter further stated that the "total cost of these repairs is $10,650.98 and represents full and final settlement relating to the damage on the property. Midland in no way admits that these damages were in any way the result of any negligence or wrong committed by Midland and is paying these damages in good faith to get the repairs made and this issue resolved in a timely fashion." (Doc. 10 at 3-4, 19).

---

[3] The February 1, 2016 Letter of Intent gives dates in "2014" for the lapse in coverage and storm damage to the property. (Doc. 10 at 17-18). The Amended Complaint gives the corresponding year as 2015 (Doc. 10 at 1-2) and Defendant refers to the storm damage as having occurred in December 2015 (Doc. 13-1 at 5 n.2).

(13)   [It is unclear from the pleadings what happened next as far as any actual payment by Defendant to Plaintiff, a matter addressed in the Court's consideration of Defendant's accord and satisfaction defense below.] As of September 22, [2016], the repair work on the storm damage had been completed but Plaintiff was then faced with "the problem of the water damage [due to a broken main pipe in his back yard] which for refinancing and Plaintiffs health in danger of not having normal water facilities plus the added loss of not being able to rent a room . . . all comes about because of the double dealing of the Defendant." (Doc. 10 at 4-7).

(14)   On February 10, 2017, Plaintiff received a notice of delinquent property taxes from the Iredell County Tax Collector for tax year 2016. The notice stated that real property taxes that remained unpaid at the end of the month would be advertised in a local newspaper. Plaintiff was told by the Tax Office that their records showed no payments were made, yet the last statement for the tax year from Defendant to Plaintiff showed payment as having been made. The Notice also stated that failure to make prompt payment might "force" the Tax Collector to consider, among other things, attachment of Plaintiff's bank account, turning the account over to a credit agency or the Sheriff, and foreclosure of his property. A copy of the Tax Collector's Notice of Delinquent Property Taxes was attached to the second Amended Complaint [treated as a supplemental pleading by this Court]. (Doc. 15-1 at 1-2, 4).

Plaintiff asserts six causes of action: (1) A violation of RESPA, 12 C.F.R. § 1024(k), for which Defendant suffered consequences; (2) Defendant denied Plaintiff's position as a V.A. Loan Holder, which delayed resolution of Plaintiff's problems; (3) Defendant's listing of insurance paid in monthly statements and continuing to do so was and is in violation of RESPA rules; (4) Defendant's prolonged resolution of problems deprived Plaintiff of rental monies due to lack of proper facilities; (5) Defendant prolonged and extended the time for resolution of the problems which prevented Plaintiff's attempts at securing refinancing and insurance; and (6) through its actions, Defendant has caused pain and suffering on the part of Plaintiff's infirmities because of denial of access to normal water facilities. (Doc. 15 at 8-9). He seeks damages of $25,000 for each of the first four causes of action, $15,000 for the fifth cause of action, and $50,000 for the sixth cause of action. (Doc. 10 at 10).

B.    Motion to Dismiss

Defendant's Motion to Dismiss and supporting memorandum address Plaintiff's asserted RESPA violations as the basis for his claim.  (Docs. 13, 13-1, 16).  As discussed below, the Court construes Plaintiff as pleading two RESPA claims: (1) a violation of 12 U.S.C. § 2605(g) relating to Defendant's alleged failure to pay insurance and taxes from an escrow account in a timely manner; and (2) a violation of 12 U.S.C. § 2605(e) relating to Defendant's response to an alleged qualified written request from Plaintiff.  These are the same RESPA sections which Defendant has addressed.  Plaintiff included possible causes of action in addition to RESPA but in light of the Court's resolution of the Motion to Dismiss with respect to the RESPA claims, possible additional causes of action need not be considered here.

Defendant moves to dismiss, arguing, with respect to the § 2605(g) claim, that "[a]s for the failure to pay insurance premiums from the escrow account, Plaintiff has not alleged he suffered any loss.  Defendant agreed to pay and has paid for all repairs arising from the storm damage." (Doc. 13; Doc. 13-1 at 4).  Defendant further argues, with respect to the § 2605(e) claim, that "[i]n reference to the [qualified written request] issue, Plaintiff's allegations show that Defendant was responsive and acted quickly to resolve the issue raised – lapse in casualty loss insurance and payment for repairs that would have been covered by the insurance." (*Id.*).  Defendant incorporates these arguments in response to the supplemental pleading and further asserts that taxes for tax year 2016 were timely paid but for some reason were refunded by the Iredell County Tax Collector, which led to the notice of delinquent taxes.  (Doc. 16 at 1).  Defendant also argues that the pleadings are sufficient to demonstrate that an accord and satisfaction has been made with regard to Plaintiff's claims.  (Doc. 13-1 at 4-5).  Plaintiff's response to the Motion to Dismiss adds no light to the issues beyond that given in his Supplemented Complaint.  (*See* Doc. 21).

The Court will first consider whether Plaintiff has stated a claim for any RESPA violations under 12 U.S.C. § 2605(g) or § 2605(e) generally and with respect to Defendant's specific arguments as to each alleged violation specifically. The Court will consider Defendant's accord and satisfaction argument in a separate section.

i.     *12 U.S.C. § 2605(g): Administration of Escrow Accounts*

Although he does not cite a specific provision of RESPA, Plaintiff cites 12 C.F.R. § 1024.17(k), which governs "timely payments" from escrow accounts. (Doc. 10 at 8). The Court construes that reference, combined with factual allegations in the Supplemented Complaint, to be an attempt to state a cause of action under 12 U.S.C. § 2605(g), "Administration of escrow accounts." Section 2605(g) provides, in relevant part, that:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

12 U.S.C. § 2605(g).

Defendant does not argue, for purposes of its Motion to Dismiss, that Plaintiff fails to state a claim under § 2605(g) other than failing to allege damages. (*See* Doc. 13-1 at 4). Plaintiff's § 2605(g) insurance premium factual allegations, supported by exhibits, are that: (1) Plaintiff had a federally related mortgage loan from Defendant (Doc. 10 at 3; Doc. 15-1 at 3); (2) the home loan included an escrow account for taxes and insurance and Plaintiff made payments into the escrow account as shown on monthly statements issued by Defendant (indicating that escrow payments were required and that such payments were made to Defendant) (Doc. 15-1 at 3); (3) the homeowners insurance on the mortgaged property lapsed for non-payment of premiums (indicating that payments from the escrow account for insurance premiums were not made in a

timely manner) (Doc. 10 at 1-2); and (4) as a result of the lapsed insurance, damage to Plaintiff's home was not covered by insurance (Doc. 10 at 1-2). These allegations do not merely track the language in § 2605(g) but contain specific alleged facts for each part of § 2605(g). Putting aside for the moment consideration of whether damages must be pleaded, these factual allegations are sufficient to "raise a right to relief above the speculative level" and "state a claim to relief [under § 2605(g)] that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

Plaintiff's § 2605(g) property tax factual allegations, supported by exhibits, are the same as (1) and (2) above, plus (3) Plaintiff received a Notice of Delinquent Property Taxes from the Iredell County Tax Collector related to taxes on the mortgaged property (indicating that payments from the escrow account for taxes were not made in a timely manner) (Doc. 10 at 1-2; Doc. 15-1 at 1-2, 4); and (4) the Notice stated that failure to make prompt payment would be advertised in a local newspaper and might "force" the Tax Collector to consider, among other things, attachment of Plaintiff's bank account, turning the account over to a credit agency or the Sheriff, and foreclosure of his property (Doc. 15-1 at 4).[4] Again, putting aside for the moment consideration of whether damages must be pleaded, these factual allegations are sufficient to "raise a right to relief above the speculative level" and "state a claim to relief [under § 2605(g)] that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

Defendant specifically asserts that "Plaintiff has not alleged he suffered any loss" and that "Defendant agreed to pay and has paid for all repairs arising from the storm damage." (Doc. 13-1 at 4). Potential damages for 12 U.S.C. § 2605 violations are set out in a common provision:

> Whoever fails to comply with any provision of this section [§ 2605] shall be liable to the borrower for each such failure in the following amounts: . . .

---

[4] Information included in Defendant's Response to Second Amended Complaint indicates that Defendant made a tax payment on the property in 2016 but for some reason the Iredell County Tax Collector refunded that amount, leading to the tax delinquency alleged. The Court will not consider, at this stage of the litigation, the effect of a refund being made but possibly not addressed by Defendant until after the Iredell County Tax Collector deemed the tax delinquent.

In the case of any action by an individual, an amount equal to the sum of –

    (A)     any actual damages to the borrower as a result of the failure; and

    (B)     any additional damages, as the court may allow, in the case of a pattern of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f). Although Plaintiff has asserted three violations of RESPA, he has not argued or sought damages under § 2605(f)(1)(B) for a pattern of noncompliance. The Court, for purposes of the Motion to Dismiss claims under § 2605(g), will consider only the issue of whether actual damages have been sufficiently alleged.

RESPA permits recovery for "*any* actual damages to the borrower as a result of the failure" of a servicer "to comply with *any* provision" of § 2605. 12 U.S.C. § 2605(f)(1) (emphases added). RESPA, however, neither defines "actual damages" nor gives examples of what constitutes actual damages. "The statute [§ 2605(f)] expressly requires the existence of damages caused by a mortgage servicer's failure to take action, it does not expressly require allegations in a pleading." *Agustin v. PNC Fin. Servs. Group, Inc.*, 707 F. Supp. 2d 1080, 1091-92 (D. Haw. 2010). Most courts, and the position adopted by this Court, is that a plaintiff asserting a RESPA claim must allege actual damages resulting from an alleged violation.

Defendant cites *Quinlan v. Carrington Mtg. Servs., LLC*, 2014 WL 3495838 (D.S.C. July 14, 2014), specifically a Magistrate Judge's report and recommendation, for the proposition that "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." 2014 WL 3495838, at *5 (quoting *Champion v. Bank of Am., N.A.*, 2014 WL 25582, at *3 (E.D.N.C. Jan. 2, 2014)).[5] The

---

[5] The Magistrate Judge referred to the plaintiff as "Quinlan" while the District Judge referred to the plaintiff as "Quinlin." This Court's citation of the case contains both the Magistrate Judge's report and recommendation and the District Judge's adoption and incorporation of the report and recommendation.

court in *Quinlan* concluded that the complaint "reveal[ed] no facts to allege actual damages resulting from defendant's actions." 2014 WL 3495838, at *5. In fact, the court in *Quinlan* concluded that plaintiff failed to show a violation of any RESPA provision, irrespective of whether actual damages had been sufficiently alleged. *Id.* at *3-*6. *Champion*, quoted in *Quinlan*, addressed a failure to allege "any damages flowing from a purported failure to be notified" of a change in servicers. 2014 WL 25582, at *3-*4.

Unlike *Quinlan* and *Champion*, which include failures to set out any facts to allege actual damages, in this case a failure to pay premiums from an escrow account as allegedly required allowed an insurance policy to lapse so that coverage was denied for substantial damage to a mortgaged home. Here, Plaintiff alleges the insurance coverage he thought he had did not exist through no fault of his own. At a minimum, the loss of coverage, attributable to Defendant's alleged failure to pay premiums, would result in damages for costs of repair and for delay in Plaintiff being able to fully enjoy his home. Plaintiff specifically alleges damages for repair costs. Plaintiff also alleges he was unable to obtain other homeowners insurance due, in part, to an inability to provide proof that the damages had been repaired, even after making an initial deposit. A period of at least two or three months passed between the time of the storm damage and Defendant's "confirmation" of an offer to make repairs.[6] To be sure, Defendant may have paid for most or all of the repairs for which it may be responsible. The Court, however, will not consider a statement in a memorandum of law that such repairs were paid by Defendant for purposes of

---

[6] Plaintiff also claims loss of rental due to Defendant prolonging his water problems. This specific claim relates to damage which may or may not be traceable to the alleged nonpayment of insurance premiums or taxes. Similarly, Plaintiff's claims for pain and suffering appear related to "denial for access to normal water facilities" which may or may not be traceable to the alleged nonpayment. In light of the Court's determination that other damages have been sufficiently alleged, the Court need not determine whether non-pecuniary damages such as pain and suffering fall within the "actual damages" language of § 2605(f) at this time. *See Simmons v. Wells Fargo Bank, N.A.*, 2015 WL 4759441, at *4 (D.N.H. Aug. 11, 2015) ("Courts are split as to whether emotional distress damages are available as actual damages under 12 U.S.C. § 2605(f)(1)(A).")

determining the related Motion to Dismiss.  Further, as discussed below, the pleadings do not allow the Court to conclude that all claims were settled by the parties as an undisputed fact.  At this stage, and taking the allegations in the Supplemented Complaint as true, Plaintiff has plead sufficient facts to allege actual damage resulting from a RESPA violation.

ii.      *12 U.S.C. § 2605(e): Duty of Loan Servicer to Respond*

The Court also construes the Supplemented Complaint as asserting a claim under 12 U.S.C. § 2605(e), "Duty of loan servicer to respond to borrower inquiries."  Section 2605(e) sets out a loan servicer's duties to respond to a "qualified written request" from a borrower.  A "qualified written request" ("QWR") is written correspondence that (1) includes, or otherwise enables the servicer to identify, the name and account of the borrower and (2) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or that provides sufficient detail to the servicer regarding other information sought by the borrower.  12 U.S.C. § 2605(e)(1)(B).

As potentially applicable here, § 2605(e) sets out two duties on the part of a loan servicer receiving a QWR.  First, a servicer receiving a QWR for "information relating to the servicing" of the loan must provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within that period.  12 U.S.C. § 2605(e)(1)(A).  Second, not later than 30 days after receiving a QWR (excluding legal public holidays, Saturdays, and Sundays), the servicer shall (1) make appropriate corrections in the account of the borrower and transmit a written notification of the correction, (2) after conducting an investigation, provide the borrower a written explanation or clarification of the reasons the servicer believes the account is correct as determined by the servicer, or (3) after conducting an investigation, provide the borrower with a written explanation

or clarification that includes information requested by the borrower or an explanation of why the information is not available or cannot be obtained by the servicer. 12 U.S.C. § 2605(e)(2). The 30-day period can be extended for no more than 15 days if the servicer notifies the borrower of the extension and the reasons for the delay in responding. *Id*. § 2605(e)(4).

Plaintiff's February 1, 2016 Letter of Intent states that the Letter "is a qualified written request" under REPSA. (Doc. 10 at 17). The Letter, which included Plaintiff's name and loan identification number, states that Plaintiff's insurance company "informed me of a discontinuance [of] Coverage on Sept. 15th 2014 [*see* footnote 3 above]. Yet all the statements sent to me show the insurance as being paid in auto pay arrangement." (*Id*. at 17-18). Although, as noted above, Plaintiff may be confusing payments made into the escrow with payments made from the escrow, the Letter of Intent raises a question about the accuracy of the monthly statements and clearly seeks "information relating to the servicing of such loan," thereby alleging sufficient facts to plausibly fall within the plain language of § 2605(e), thus triggering a 5-day period for Defendant to acknowledge receipt of the QWR and a 30-day period to take action pursuant to § 2605(e)(2).

Defendant argues that "Plaintiff's allegations show that Defendant was responsive and acted quickly to resolve the issue raised — lapse in casualty loss insurance and payment for repairs that would have been covered by the insurance." (Doc. 13-1 at 4). In support, Defendant again cites *Quinlan*. The court in that case questioned whether an inquiry related to the validity of a debt was a QWR under the statute but concluded that, even if was a QWR, the defendant timely acknowledged and responded as demonstrated on the face of the complaint. 2014 WL 3495838, at *4-*5. Here, it is unclear when Defendant acknowledged receipt of Plaintiff's QWR but Defendant did respond on March 21, 2016 "[p]ursuant to [Plaintiff's] request" with a confirmation

that Defendant agreed to pay certain costs associated with the repair of the property. (Doc. 10 at 19).

It very well may be that, as Defendant states, it acted quickly to resolve the issue raised. But the documents before the Court consist of Plaintiff's February 1, 2016 QWR and Defendant's March 21, 2016 "Confirmation of Payment." More than 5 days and 30 days (excluding holidays, Saturdays, and Sundays) elapsed between these two dates. Upon further information provided to the Court at a later stage of litigation, the Court may be able to determine as a matter of law that Defendant acted timely in response to the QWR. The Court, however, concludes that Defendant's assertion that "Plaintiff's allegations show that Defendant was responsive and acted quickly to resolve the issue raised," is insufficient to warrant dismissal at this stage of the litigation.

In sum, "[d]etailed factual allegations are not required" in a complaint, as long as there is sufficient factual matter to raise a claim to the level of plausibility. *Twombly*, 550 U.S. at 555. Plaintiff has alleged sufficient factual matter here. The allegations in the Supplemented Complaint, including attachments, state a plausible claim for relief under 12 U.S.C. § 2605. For the foregoing reasons, Defendant's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13) will be denied unless Defendant prevails under its alternate ground for dismissal – accord and satisfaction.

### iii. *Accord and Satisfaction*

Defendant argues that in the event the Court finds Plaintiff has alleged a plausible claim for relief, the materials filed by Plaintiff and the allegations contained in the Supplemented Complaint show that the claim has been resolved through payment, resulting in an accord and satisfaction. Plaintiff argues that from the allegations in the Complaint and attached exhibits, "the only reasonable inference regarding payment of $10,650.98 by Defendant for repairs to Plaintiff's

home resulting from storm damage was that the payment 'represents full and final payment relating to damage on the property.'" (Doc. 13-1 at 4-5 (quoting Doc. 10 at 3, 4, 7, 19 (Ex. 5))).

An accord and satisfaction is an affirmative defense. Fed. R. Civ. P. 8(c). The burden of establishing an affirmative defense rests on the defendant. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "In an accord and satisfaction, the accord is the agreement and the satisfaction is execution of the performance of the agreement." *Futrelle v. Duke University*, 488 S.E.2d 635, 640 (N.C. App. 1997) (applying North Carolina law), *rev. denied*, 494 S.E.2d 412 (N.C. 1997).

A Rule 12(b)(6) motion is intended to test "the legal adequacy of the complaint" and not address the merits of any affirmative defense. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); *Praxair*, 494 F.3d. at 464. "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). The principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on *the face of the complaint*.'" *Praxair*, 494 F.3d at 464 (emphasis in original) (quoting *Forst*, 4 F.3d at 250).

Defendant cites to the following allegations of Plaintiff (the first three are complaint allegations, the fourth is from Defendant's March 21, 2016 letter to Plaintiff): (1) "Plaintiff contacted Defendant who returned a letter settlement, dated March 21, 2016"; (2) "Plaintiff requested Defendant pay the Settlement of [$]10,650.98"; (3) "Sept. 22. As of this date the repair work for the storm damage has been completed"; and (4) "Midland States Bank . . . agrees to pay the following costs in relation to the repair of property . . . . The total costs of these repairs is $10,650.98 and represents full and final settlement relating to the damage on the property." (Doc. 13-1 at 5). Plaintiff argues that as repairs were made, there was a source of funding and the

18

implication is that it was the source. From this, Defendant argues that "the only reasonable inference regarding the payment of $10,650.98 by Defendant for repairs to Plaintiff's home resulting from storm damage was that the payment 'represents full and final payment relating to damage on the property.'" (*Id*.).

On the face of the pleadings, however, there is no direct statement that such payment was actually made or that a meeting of the minds over an accord and satisfaction was reached. Defendant's March 21, 2016 Letter to Plaintiff does not itself demonstrate what payments were made or the ultimate terms of any agreement. Thus, it does not appear on the face of the Supplemented Complaint that there was a final agreement (*i.e.*, an accord) or that payment was made in execution of an agreement (*i.e.*, a satisfaction). The Court, therefore, cannot say that all facts necessary to the affirmative defense of accord and satisfaction "clearly appear[] on the face of the complaint." *See Praxair*, 494 F.3d at 464 (emphasis omitted).

Further, the support provided by Defendant specifically referencing "the only reasonable inference" language in determining an accord and satisfaction expressly addressed adjudication by summary judgment, not by a motion to dismiss, and where "the essential facts are made clear of record." (Doc. 13-1 at 5); *see Rockingham Square Shopping Ctr., Inc. v. Integon Life Ins. Co.*, 279 S.E.2d 918, 925 (N.C. App. 1981) ("But where the only reasonable inference is existence or nonexistence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record." (quoting *N.C. Monroe Constr. Co. v. Coan*, 228 S.E.2d 497, 501 (N.C. App. 1976))). Here the essential facts are not made clear in the record before the Court. The Court concludes Defendant failed to meet its burden of showing an accord and satisfaction at this stage of the litigation.

*Conclusion on Motion to Dismiss*

For the foregoing reasons, the Court concludes that Plaintiff has met the requirements of *Iqbal* and *Twombly* to avoid a Rule 12(b)(6) dismissal. The Court further concludes that the accord and satisfaction affirmative defense cannot justify dismissal at this stage in light of the pleadings presently before the Court. As a result, Plaintiff's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13) is **DENIED**.

C.    Motion to Strike

Defendant moves to strike Plaintiff's "Memorandum Act of RESPA." (Doc. 19). The Memorandum recites a "horrific experience" of Plaintiff in April 2017 related to a gas leak, water leakage, and a skin condition. (Doc. 18). Defendant argues that Plaintiff failed to first obtain leave of Court to file an additional pleading and that the pleading "appears to be irrelevant and impertinent to any matter presently under the Court's consideration." (Doc. 19 at 1). Defendant requests the Court to strike Plaintiff's "Memorandum Act of RESPA" pursuant to Fed. R. Civ. P. 12(f). (Doc. 19 at 1; Doc. 19-1 at 1-2).

Rule 12(f) provides, in relevant part, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The rule applies only to pleadings, including complaints and amended complaints. *Sahoo v. Gleaton*, 2017 WL 353971, at *1 (E.D.N.C. Jan. 24, 2017) (rule applies only to pleadings; not applied to response in opposition or exhibits to the response). Although courts have broad discretion in disposing of motions to strike, such motions "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks omitted) (quoting 5A A. Charles Alan Wright & Arthur

R. Miller, *Federal Practice & Procedure* § 1380 (2d ed. 1990)); *Reid v. Charlotte Mecklenburg Schs.*, 2015 WL 4941794, at *4 (W.D.N.C. Aug. 19, 2015) (same) (citing *Gilmore*).

The Court must first consider whether the "Memorandum Act of RESPA" ("Memorandum") is a pleading. The docket treats the Memorandum as a "letter" and, indeed, the Memorandum begins "Your Honor," and seeks no relief. (Doc. 18 at 1.) Even recognizing Plaintiff is proceeding *pro se*, the Court has difficulty construing the Memorandum as a pleading. The focus appears to be more informational in nature, letting the Court know of Plaintiff's plight. Further, when Plaintiff wished to amend his Complaint, he knew how to do so, having amended the original Complaint twice, titling the documents as amendments. (*See* Docs. 10, 15). Nor can the Memorandum be construed as a motion, a memorandum connected to a motion or a report filed in response to a directive of the Court. As such, to the extent the Memorandum is not a pleading, it is improperly filed and should be stricken.

To the extent the Memorandum could be construed as a pleading, or an attempt to amend (or supplement) the already amended Complaint, the Court finds the proffered document is impertinent (in the sense of not pertinent or irrelevant) to the claims in this litigation. *Impertinent*, Blacks Law Dictionary (6th ed. 1990) ("That which does not belong to a pleading, interrogatory, or other proceeding; out of place; superfluous, irrelevant"). Plaintiff does not allege that the damages he lists are connected in any way with a previously alleged lapse in insurance coverage or that Defendant is responsible for a current lapse which prevents coverage for these claims.

To be sure, the Memorandum states: "Plaintiff contacted the original plumer [sic], advising him of what took place and he checked out the breack [sic] and water was restored which was 20 minutes after 8 months while Defendant continued to list insurance as being paid." (Doc. 18 at 2). Plaintiff, however, has asserted that he suffered damages due to a failure of Defendant to pay

insurance premiums which caused the policy to lapse in September 2015. The lapse was being addressed no later than March 2016. (*See* Doc. 10 at 19 (correspondence between Plaintiff and Defendant on proposal to settle claims)). The damage alleged in the "Memorandum Act of RESPA" occurred in April 2017, over one year later. (Doc. 18 at 1 (referencing incidents of "the past week")). Further, even if an insurance lapse occurred for eight months (as possibly suggested in the Memorandum), that lapse would have ended no later than May 2016 according to Defendant's own submissions. (*See* Docs. 10, 15-1, 18). Thus, on its face, the Memorandum does not appear to be pertinent to Plaintiff's RESPA claims. To the extent the Memorandum could be construed as a pleading, it should be stricken. For the same reasons, were the Court to construe the Memorandum as a motion to amend or supplement pursuant to Rule 15(a) or Rule 15(d), the Court would deny leave to amend or supplement.

For the foregoing reasons, Defendant's Motion to Strike Plaintiff's "Memorandum Act of RESPA" (Doc. 19) is **GRANTED** and the "Memorandum Act of RESPA" (Doc. 18) is **STRICKEN**.

## V.     CONCLUSION

The Court expresses no opinion on the merits of Plaintiff's claims nor on the merits of Defendant's affirmative defense of accord and satisfaction. The Court only concludes that Plaintiff's allegations, taken as true for purposes of ruling on the Motion to Dismiss, "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face," and that the accord and satisfaction affirmative defense may not be resolved at the motion to dismiss stage under the circumstances in this case. This matter may be resolved on summary judgment but not on a motion to dismiss.

## VI. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)     Defendant's Motion to Dismiss Pro Se Complaint as Amended (Doc. 13) is

**DENIED**; and

(2)     Defendant's Motion to Strike Plaintiff's "Memorandum Act of RESPA" (Doc. 19)

is **GRANTED** and the "Memorandum Act of RESPA" (Doc. 18) is **STRICKEN**.

Signed: August 30, 2017

Richard L. Voorhees
United States District Judge